WHITTLE ET AL. *v.* BOARD OF ZONING APPEALS OF BALTIMORE COUNTY ET AL.

[No. 210, October Term, 1955.]

*Decided  August  20,  1956.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Kenneth C. Proctor* for appellants.

*George W. McManus, Jr.,* and *W. Albert Menchine,* with whom were *O'Conor & McManus,* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore County affirming an order of the Board of Zoning Appeals of Baltimore County which had granted a special permit to the individual appellees (hereinafter usually referred to as "the appellees") to use the building located at 7400 York Road as a funeral home. The Board of Zoning Appeals had reversed the Zoning Commissioner who had denied the request for a special permit.

The first and principal controversy is whether or not a prior adverse ruling by the Circuit Court for Baltimore County on an application for a special permit for a funeral home on the same premises is *res judicata* as to the present case.

The earlier petition was filed on November 23, 1949, by Lucretia G. Leonard, as owner, and the appellees,. as contract purchasers, to obtain a special permit to use the same property as a funeral home. This petition was denied by the Zoning Commissioner, but was granted by the Board of Zoning Ap-

peals which reversed the Zoning Commissioner on appeal by the petitioners. The only witnesses produced by the petitioners at the hearing before the Board were J. Liston Wiedefeld, one of the petitioners, and Charles D. DeLosier, who was the secretary of the Maryland State Funeral Association. Mr. Wiedefeld testified that the property in question had been used as a Medical Research Laboratory from 1934 to 1943 and that it had not been used as a residence during that time. He testified further that there was a great need for a funeral home in the neighborhood because of the great increase in the population of Baltimore County and the lack of increase in a proportionate number of funeral establishments. He also testified that at that time he owned a funeral home in Baltimore and did not intend to move it to the proposed new location but intended to operate two separate funeral establishments. Mr. DeLosier testified that there was a definite need for a funeral home in the neighborhood because of the large population. Eight witnesses testified in opposition to the petition to the effect that they had lived in a highly residential area with fine homes and that their homes either abutted on or were in close proximity to the property in dispute and that the issuance of the special permit would adversly affect the value and enjoyment of their homes and would increase the traffic along York Road. The Board of Zoning Appeals stated in its opinion reversing the Zoning Commissioner that it felt that the granting of the special permit for a funeral home "will not create congestion and increase the traffic hazard, will not affect the health, safety or the general welfare of the people of the community, neither does the Board feel that the granting of this special permit will depreciate the value of adjacent property." The Board attached as a condition to the granting of the permit "the planting of additional shrubbery on the north side of the property."

The neighboring property owners then filed a petition for a writ of certiorari in the Circuit Court for Baltimore County to review the decision and order of the Board of Zoning Appeals. Judge John B. Gontrum, in reversing the Board of Zoning Appeals, found that the petitioners had offered no testimony that would justify the granting of the permit and

that the granting of the permit would have an adverse effect on the value of the real estate in the vicinity.

Thereafter, following a motion for reargument, Judge Gontrum adhered to his original decision and filed an opinion in which he reviewed the testimony before the Board of Zoning Appeals, and relied principally upon *Heath v. Mayor & City Council of Baltimore,* 187 Md. 296, at 304, 49 A. 2d 799, and *Jack Lewis, Inc. v. Mayor & City Council of Baltimore,* 164 Md. 146, 164 A. 220. He added to what Judge Offutt wrote in the *Jack Lewis, Inc. Case* about the depressing effect of a funeral home in a residential area, some quotations on the subject of death from Bacon and Shakespeare and some comments of his own on the different manner in which death is regarded by different peoples and in different places. In speaking of the attitude of many persons in this section of the country, he observed that "The solace of religion and the consolations of philosophy are not sufficient to change the fundamentally pessimistic attitude of most persons toward death and the grave." He also pointed out that the term, "funeral home," is a euphemism and that such an enterprise is commercial, not residential.

At the time of the decision of the first case by the Circuit Court for Baltimore County, there was no provision for a further appeal in a Baltimore County zoning case to the Court of Appeals, so that the decision of the Circuit Court was final.

The Wiedefeld's contract to purchase the property at 7400 York Road was conditioned upon the special permit for a funeral home being granted. In spite of the fact that the permit was denied, they proceeded to purchase the property. Thereafter, on April 27, 1954, the appellees, now the owners of the property, filed the second petition, which gives rise to the present case for a special permit to use the same property for a funeral home. Upon denial of this petition by the Zoning Commissioner, they appealed to the Board of Zoning Appeals, which reversed the Commissioner and granted the special permit.

At the hearing before the Board, the appellees called twelve witnesses. Among them were the pastor of a church which adjoins the subject property on the south and which has over

200 members, and also several neighbors, all of whom said that they had no objection to a funeral home being on the property, and some of whom testified that they thought the establishment of a funeral home on the property would be beneficial to the neighborhood. There was also testimony that a funeral home would have no adverse effect on York Road traffic and parking because there would be sufficient off-street parking furnished on the ample grounds of the home itself. There was further testimony by real estate experts that a funeral home at this location would not decrease the value of residential property in the neighborhood. There was also testimony that it would cause no psychological ill-effects on the neighbors; and there was some testimony relating to commercial activity in the neighborhood which was claimed to have changed its basic characteristics. Finally there was testimony that the population of Baltimore County had increased tremendously since 1949, the date of the first application, and that there was now even a greater need for more funeral homes in the county.

Six witnesses testified on behalf of the appellants objecting to the issuance of the special permit. Their testimony was to the general effect (1) that there was no need for a funeral home in the area, (2) that the granting of the permit would make the place commercial and (3) that it would adversely affect the value of neighboring properties.

After the decision of the Board of Zoning Appeals, the protestants filed a petition for a writ of certiorari in the Circuit Court for Baltimore County to review its decision and order. The appellees were granted leave to intervene as parties defendant. Judge Lester L. Barrett upheld the decision of the Board of Zoning Appeals, holding that the Board had acted in the exercise of its discretion in granting the special permit. In rejecting the contention that the previous decision by Judge Gontrum made the matter *res judicata,* he stated that "there is reason to believe, from the record, that since the ruling of Judge Gontrum, at least one additional commercial usage, that of a filling station has been granted in the immediate location, and, in addition, Judge Gontrum based his rul-

ing on an entirely different record than the one that is now before this Court."

The appellants raise two questions:

1. Is the decision of the Circuit Court for Baltimore County in the first case *res judicata* in the second case?

2. Are the sections of the Zoning Regulations for Baltimore County which provide for the issuance of a special permit or exceptions for a funeral establishment in a residential zone invalid because they authorize unlawful "spot zoning?"

We find it necessary to consider only the first of these questions.

The appellants contend that under the doctrine of *res judicata* and the decision of the Circuit Court in the 1949 case, the petition in the present case should have been denied. They rely particularly upon *Mayor & City Council of Baltimore v. Linthicum,* 170 Md. 245, 183 A. 531, and *Bensel v. Mayor & City Council of Baltimore,* 203 Md. 506, 101 A. 2d 826, in support of this contention.

In *Baltimore v. Linthicum,* the petitioner in January, 1933, and again in October, 1933, filed petitions to use a piece of property in a residential area as a post office sub-station. Both of these petitions were rejected because the proposed use would be a business use. The petitioner appealed to the Baltimore City Court from the denial of his second petition, and that Court affirmed the Board. No appeal from the City Court to this Court in such a case was then allowed. The owner then instituted mandamus proceedings, but such proceedings were held inappropriate and no appeal was taken. After the passage of Chapter 448 of the Acts of 1935, which allowed an appeal to this Court from orders of the Baltimore City Court in zoning cases, the owner filed a third petition for a special permit to use the same property as a post office sub-station. This was denied by the Board of Zoning Appeals, the case was appealed to the Baltimore City Court and on this occasion the City Court reversed the Board and held that the permit should have been granted. On appeal to this Court, the judgment of the Baltimore City Court was reversed, and the Court of Appeals held that the petitioners

were bound by the first decision. The proposed use was still a business use and the first decision was *res judicata* of that question.

In *Bensel v. Baltimore,* 203 Md. 506, 101 A. 2d 826, the appellant had filed an application, based upon an alleged non-conforming use, to continue using his place of residence as a place of business. It was held by the Baltimore City Court on appeal from the Board that there was not enough evidence to show a non-conforming use, and no appeal was taken from that judgment. Four years later the appellant filed an amended bill of complaint in the Circuit Court of Baltimore City alleging essentially the same facts as in the first case and asking for a declaratory decree declaring that he had a non-conforming use in the property. The Circuit Court held that the first case had adjudicated the question whether there was or was not a non-conforming use and was therefore conclusive of the rights of the parties, and this Court affirmed this hold-ing. The fact that there was not a non-conforming use on a certain date was a fixed and stable fact and could not be changed by anything that happened thereafter.

The *Linthicum* and *Bensel Cases* differ from the present case in that the facts which had been adjudicated in the first litigation were not, and could not be, affected by any change in facts or circumstances or conditions which might have oc-curred in the interim between the two suits. In the *Linthicum Case,* a business use continued to be a business use; in the *Bensel Case,* the existence or non-existence of a non-conform-ing use on a past date could not be affected by any subsequent event. (There had been no amendment of the law in either of those cases, nor is any amendment of the law involved in the instant case.)

The *Linthicum* and *Bensel Cases* do not hold that the de-nial of a special permit which has once been sustained (or ordered) by a court of competent jurisdiction can never be re-opened or reconsidered, and we do not understand the appel-lants' contention as going so far as to assert such a doctrine. They seem to concede that a change in circumstances might warrant reconsideration and a different result in·an applica-tion for a special permit in such a case as the present, but they

deny that a showing of any substantial change in facts or circumstances has been made. The correctness of this contention is the key to the case.

Before going further, we may take note of several points. First, the fact that the decision on the 1949 petition was that of a Circuit Court does not prevent the operation of the rule of *res judicata*. *Baltimore v. Linthicum, Bensel v. Baltimore*, both cited above. Second, the doctrine of *res judicata* has been held not to be applicable where the earlier decision was made not by a court of record, but by a board of zoning appeals, an administrative agency. *Knox v. Mayor & City Council of Baltimore*, 180 Md. 88, 23 A. 2d 15. Third, provisions of a zoning ordinance such as the Baltimore County ordinance, under which, until after the lapse of a period of six months [now eighteen months in Baltimore County] a board of zoning appeals may not consider and act upon a new application for a special permit previously denied does not dispense with the rule of *res judicata*. *Baltimore v. Linthicum, supra*. As was said in that case in speaking of a similar provision in the Baltimore City ordinance (170 Md. at page 249, 183 A. at page 533):

> "For the decision of this case we need not determine exactly what was within the contemplation of the clause in its reference to subsequent submission of substantially the same application to the board of zoning appeals. We do not interpret it to dispense with the rule, so as to provide that, after an owner has submitted to the courts on appeal the questions of the character and classification of his use, and the correctness of its exclusion, and has obtained a decision that it is a business use, rightly excluded from the particular neighborhood, he can continue asking every six months for judicial decisions on exactly the same questions. If that were the meaning, this court, under the Act of 1935, as well as the trial court, would be required to examine and decide the case as often as the owner might wish to bring it up, allowing six months' intervals in his activities. The

words seem to us to require no such interpretation, and we think it would be unreasonable to attribute that purpose to the Legislature."

The general rule, where the question has arisen, seems to be that after the lapse of such time as may be specified by the ordinance, a zoning appeals board may consider and act upon a new application for a special permit previously denied, but that it may properly grant such a permit only if there has been a substantial change in conditions. See *Bassett on Zoning* (2nd Ed., 1940), pp. 119-120; *Yokley on Zoning Law and Practice* (1953 Ed.), § 128; 168 A. L. R. 124; *St. Patrick's Church Corporation v. Daniels,* 113 Conn. 132, 154 A. 343; *Burr v. Rago,* 120 Conn. 287, 180 A. 444; *Rommell v. Walsh,* 127 Conn. 272, 16 A. 2d 483; *Rutland Parkway, Inc. v. Murdock,* 241 App. Div. 762, 270 N. Y. S. 971. This rule seems to rest not strictly on the doctrine of *res judicata,* but upon the proposition that it would be arbitrary for the board to arrive at opposite conclusions on substantially the same state of facts and the same law.

In the instant case we have, of course, a prior court determination and the question of *res judicata* is directly involved.

Many zoning questions do not rest upon immutable facts *(St. Patrick's Church Corporation v. Daniels, supra),* and the application of the rules of *res judicata* is not always so easy and so clear cut as in the *Linthicum* and *Bensel Cases.* It is our view that where the facts are subject to changes which might reasonably lead to an opposite result from that arrived at in an earlier case, and if there have been substantial changes in fact and circumstances between the first case and the second, the doctrine of *res judicata* would not prevent the granting of the special permit sought by the appellees. They contend that such changes have occurred, and we shall now proceed to examine the alleged differences.

The changes in circumstances which the appellees rely upon may be summarized as follows: (1) increased commercialization of the area; (2) increased population of Baltimore County; (3) decreased opposition of neighbors and some support by them; (4) additional conditions attached to the granting of the permit.

Only two changes in the immediate neighborhood are
shown. One is the construction of a new stone church build-
ing to replace a wooden one on the property just south of the
appellees' land. That involves no commercialization. The
other is the addition of one filling station in an area already
commercial and already containing two such stations. Its
distance from the Wiedefeld property is not clearly shown,
but it would seem to be about four hundred feet to the south
on the York Road.

There have been considerable commercial developments on
the York Road both north and south of the appellees' prop-
erty. The road itself is a heavily traveled north-south high-
way to the north of the City of Baltimore. La Paix Avenue
runs west from the York Road a little to the north of the
Wiedefeld land and a number of lots fronting on the south
side of La Paix Avenue back on the Wiedefeld tract. Both
to the west of No. 7400 York Road and along La Paix Ave-
nue the area is residential. Apart from the new filling sta-
tion, none of the new commercial developments along the
York Road, so far as we are informed, have had any effect
upon the residential character of the neighborhood where the
protestants live. That one new filling station, some four hun-
dred feet to the south on a busy highway, at or near an in-
tersection already having two filling stations does not, in our
judgment, show any substantial change or increase in com-
mercialization between 1949 and 1954.

Increased population of the County and an asserted need
for a new funeral home in the Towson area to meet the needs
of an increased population added no new element to the case.
They were among the items relied upon by the appellees in
their first effort to secure a special permit. In the second
case, they offered testimony to show a further increase in pop-
ulation and hence a greater need for a new funeral home.
Testimony on this phase of the case was more detailed in the
second case than in the first, but the issue was the same and
the testimony in the present case does not, in our estimation,
show a materially different situation from that prevailing in
1949.

With regard to the attitude of the neighbors, there was undoubtedly less opposition to the appellees' second application for a permit than to their first, and some neighbors supported the second application. The Board attached a good deal of weight to these facts. This Court has on several occasions expressed disapproval of zoning and kindred actions being based upon a "plebiscite of neighbors." *Benner v. Tribbitt,* 190 Md. 6, 57 A. 2d 346; *Northwest Merchants Terminal, Inc. v. O'Rourke,* 191 Md. 171, 60 A. 2d 743; *Kahl v. Consolidated Gas, El. Lt. & Power Co.,* 191 Md. 249, 60 A. 2d 754. The latter case and *Anne Arundel County v. Snyder,* 186 Md. 342, 46 A. 2d 689, indicate that the wishes of residents of a neighborhood may be considered by the legislative body in enacting a restrictive regulation; but, as was said in the *Kahl Case,* "A restrictive act may not be passed or a permit refused merely because the community wants it." These cases dealt with the imposition of restrictions, not their waiver, but the guiding principle would seem to be the same as to either—the benefit of the community at large. The opinion in the *Kahl Case* shows this to be the basis for the rule, for in the sentence following the above quotation, the majority opinion states: "But even if the community wants it, that does not invalidate the action of the authorities, if such action is beneficial to the community at large, and prevents the erection of structures inimical to the public health, welfare or safety." (191 Md. at 256.) There does not seem to have been any difference between the majority and minority opinions on this point. Judge Henderson's dissenting opinion, in which Judge Delaplaine joined, states (at page 264 of 191 Md.): "It is quite true that zoning looks to the future, and has as one of its principal objects the preservation of property values in residential districts by prohibiting or restricting the establishment of new commercial or industrial enterprises in particular areas."

The opinion of the neighbors is doubtless of some weight in appraising the probable effect upon land values in a community of a proposed change in the use of some of the land in the neighborhood; and it is true that Judge Gontrum attached

some importance to the widespread neighborhood opposition to the appellees' first petition. However, the extent of the actual change shown in the attitude of neighbors does not seem impressive. Those most directly affected remain opposed to the appellees' petition. It is not shown how many of the members of the nearby church lived in the immediate vicinity—other than the minister—and it appears that a considerable part of the congregation lived at some little distance from the church and the proposed funeral home. One newcomer to the neighborhood who lived on the other side of the York Road favored the petition, another witness who resided five hundred feet away, also on the other side of the York Road and in the neighborhood of the filling stations, favored it. Still another, a personal friend of Mr. Wiedefeld, who lived a block or so away, and who was doubtful whether he could see the Wiedefeld property from his home, but thought he might possibly be able to see it from the second floor, was favorable to the granting of the permit. He admitted that his feelings might be different if the funeral home was to be alongside of his home.

None of these witnesses, so far as we are informed, testified to any facts upon which his opinion was based which had not been presented, or available for presentation, in the first case.

In our view, such change in neighborhood sentiment as may be shown by the record, including any inference which may be drawn from the absence of organized neighborhood association opposition in the second case, does not show such a change in circumstances as to make the doctrine of *res judicata* inapplicable.

The additional conditions attached to the granting of the permit in the second case seem to amount to only slight distinctions.

Restricting the area covered by the permit to a depth of four hundred feet west of the York Road made no substantial practical difference at least with regard to the immediate use of the property. That four hundred foot depth included, as the Board stated, all of the area which the petitioners pro-

posed to use for the funeral home according to a plat submitted to the Board. This plat also showed some plans with regard to shrubbery, parking areas and driveways, and was incorporated by reference in the Board's opinion and order. Its provisions with regard to the planting of shrubbery were somewhat more extensive than what was required by the Board's order in the first case. There were also some changes in proposed lighting and in the sign to be placed at the entrance, but they were of little moment.

In general, we think that the petitioners presented a more thorough and persuasive case on their second application than on their first. This was notably true of the evidence with regard to the probable effect of the establishment of a funeral home upon land values in the neighborhood, even though the trial Judge declined to accept the appraisers' views based upon comparable properties in another suburban area at their full face value, because they did not take sufficiently into account the general rise in land values.

But the application of the rule of *res judicata* does not depend upon whether or not the case was as comprehensively or persuasively presented at the first trial as at the second. As was stated in *Sterling v. Local 438, etc.,* 207 Md. 132, 113 A. 2d 389, (certiorari denied, 350 U. S. 875, 76 S. Ct. 119, 100 L. Ed. (Adv. Sh.) 75, rehearing denied, 350 U. S. 898, 76 S. Ct. 151, 100 L. Ed. (Adv. Sh.) 101, motions for leave to file petitions for rehearing denied, 350 U. S. 943, 76 S. Ct. 298, 100 L. Ed. (Adv. Sh.) 181) "If the second suit is between the same parties and is upon the same cause of action, a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated." The first rezoning case was litigated and all the information which could have been produced should have been produced and the second case cannot be decided on testimony which might have been introduced in the first case.

Because essentially the same facts appeared in the second case as appeared or as could have been shown in the first case, the appellees are barred by *res judicata,* and their petition

50

should have been denied. The order of the Circuit Court will accordingly be reversed and the case remanded.

> *Order reversed, with costs, and the case remanded to the Circuit Court for Baltimore County for the passage of an order in accordance with the opinion of this court.*