HELLER ET AL. *v.* SEGNER ET AL.

[No. 199, September Term, 1970.]

*Decided January 13, 1971.*

394

*Motion for rehearing filed February 9, 1971; denied February 16, 1971.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Charles C. W. Atwater,* with whom were *David A. Carney* and *Mylander & Atwater* on the brief, for appellants.

*Malcolm B. Smith,* with whom were *Smith & Wohlgemuth* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

The appellants (who seek a rezoning in Anne Arundel County from residential to commercial) used the spear of perseverance to attack, advancing beneath their banner proclaiming: "If at first you don't succeed, try, try, try again," [1] and the appellees (protesting neighbors) defended with the shield of res judicata, waving their flag

---

[1] William Edward Hickson, Try and Try Again, quoted in The Home Book of Quotations (10th ed. 1967), p. 1488. The true authorship of the famous line has proven elusive. One T. H. Palmer is credited in H. Ferris, Favorite Poems, Old and New (1957), p. 540, while Woods, A Treasury of the Familiar (1959), p. 104, has it that the original author remains unknown.

inscribed: "The more things change, the more they remain the same." [2] In 1962 the County Commissioners granted the petition of the owner of a 5.6 acre plot of ground at the northwest corner of Benfield Road (which runs east and west) and Jumpers Hole Road (which runs north and south) to rezone the property for commercial use. The comprehensive zoning in 1952 had put 100 feet by some 200 feet at all four corners of the intersection in the Light Commercial zone. The 1962 application sought —and the Commissioners granted—a change at the northwest corner to Heavy Commercial (for use as a filling station) and a change of the rest of the property from Agricultural to Light Commercial for use as the site of a shopping center.

Judge Duckett, in the Circuit Court for Anne Arundel County, nullified the actions of the Commissioners, ruling that there had been shown no substantial change in the character of the neighborhood since the original comprehensive zoning of 1952. On appeal, this Court affirmed. Judge Henderson said for the Court in *County Comm'rs v. Fairwinds,* 230 Md. 569, 572:

> "We think the Chancellor was correct in holding that the rezoning was not supportable on the record. The neighborhood is almost solidly residential. There is a tavern on one corner and a filling station on another * * *. The lot in question abuts a proposed elementary school of 24 rooms and is directly across the road from a country club. There was no evidence at all of mistake in the original zoning in the comprehensive plan adopted in July 1952. The change sought to be established in order to justify rezoning to permit the shopping center, was that in recent years some property, formerly farm land, had been utilized for the building of residences, with a consequent increase in the population. But as the Chancellor pointed out, a mere

2. "Plus, ca change, plus c'est la même chose." Alphonse Karr, Les Guêpes (January 1849).

increase in population does not prove a change in the character of the neighborhood to justify another type of zoning. See *Didlake v. Poteet,* 228 Md. 588, 591. It was also argued that because of the increase in population a need for additional shopping facilities was demonstrated. But there was precise testimony that shopping facilities in the neighborhood were more than adequate, and the testimony as to public need was based upon general conclusions from population figures that were not even put in evidence. The protestants argued, with some force, that the increase in shopping facilities and service stations in the area defined exceeded the increase in population. The Board made no finding of fact on this point but only a general finding that 'conditions have changed'."

In 1969 the County Board of Appeals granted precisely the same changes in classifications to permit the filling station and the shopping center that the Commissioners had granted in 1962. Judge Beardmore set aside the action again, saying:

"[T]his court does not feel that the [burden] has been met by the applicant in this case. The requested reclassifications are not substantiated by the requisite changes in the character of the neighborhood. If anything, the neighborhood has become more residential since 1962."

Judge Brune for the Court found in *Whittle v. Bd. of Zoning Appeals,* 211 Md. 36, 45, that the doctrine of res judicata applied to the decision of a court in a zoning appeal, saying:

"It is our view that * * * if there have been substantial changes in fact and circumstances between the first case and the second, the doctrine of *res judicata* would not prevent the granting of the special permit [for a funeral

home on York Road in Baltimore County] sought by the appellees."

The changes in the circumstances upon which the appellees relied in *Whittle* were summarized in the opinion as follows: (1) increased commercialization in the area; (2) increased population; (3) decreased neighborhood opposition; and (4) additional conditions attached to the grant of the special permit.

The Court in *Whittle* held that the construction of a new stone church to replace a wooden one and the addition of a filling station in an area already commercial and containing two such stations did not "show any substantial change or increase in commercialization between 1949 and 1954"; that increase in population had been urged in the first case; that zoning cannot be made to depend on a plebiscite of neighbors; and that the matter of the more stringent conditions had no significance.

In *Woodlawn Ass'n v. Board*, 241 Md. 187, 199, we reaffirmed the holdings of *Whittle* that there must be significant and substantial change in the character of the neighborhood or such a change in the applicable law if the second judicial decision is not to be the same as the first, and indicated the pragmatic test of significance to be whether the properties relied on as changes would "if developed in actual use under their new classifications, have any real effect upon or make any real change in the character of the neighborhood as [residential]." See also *Chatham Corporation v. Beltram*, 243 Md. 138.

The changes that have occurred within 2,000 feet of the intersection of Benfield Road and Jumpers Hole Road — and indeed within a radius of two miles of the intersection—have been very largely those of permitted intensification of residential uses, such as changes from agricultural use to cottages or manor type houses, with a consequent large increase in population. The record fully supports Judge Beardmore's finding that "If anything, the neighborhood has become more residential since 1962."

To support the argument that the great growth in residential use surrounding the property involved raises a need for a shopping center that should be satisfied by the rezoning sought, the appellants rely on various commercial and public changes that have occurred since 1962. First is the intensification of light commercial uses along the south side of Benfield Road running east from Jumpers Hole Road for perhaps 1500 feet, such as the building of a Seven-Eleven Store; second is the reclassification from light commercial to heavy commercial of the lot on the south side of Benfield Road just east of Jumpers Hole Road to permit the building of a filling station; third, the rezoning to light commercial of a lot on the east side of Jumpers Hole Road north of Benfield Road to permit the building—not yet realized — of an Acme Store; and, finally, the building by the County of a 1,000,-000 gallon water tank 500 feet north of Benfield Road on Jumpers Hole Road and of a school well beyond the tower which fronts on another road. Discussing them in inverse order, the tank and the school are uses legislatively permitted as compatible in a residential area; we so held in *France v. Shapiro*, 248 Md. 335, 343:

> "It is well recognized that the location in a residential zone of improvements of a character permitted by the ordinance, even although not necessarily compatible with a residential development, is not the type of change of character of a neighborhood which will justify reclassification. *Agneslane, Inc. v. Lucas* [247 Md. 612] (fire house) ; *Baker v. Montgomery County Council* [241 Md. 174] (school) ; *Levy v. 7 Slade, Inc.*, 234 Md. 145 .* * * (synagogue, school, parking lot, powerhouse) ; *Kaslow v. Mayor and Council of Rockville*, 236 Md. 159 * * * (church) ; *Montgomery County v. Ertter*, 233 Md. 414 * * * (armory, motor shed, paved area)."

As far as the building of the second gasoline station

on the south side of Benfield Road east of Jumpers Hole Road—there was one on the north side in 1962—and the rezoning for the Acme store are concerned, we paraphrase the Court's words in *Whittle,* p. 46 of 211 Md., as follows:

> "The other [change claimed to be significant] is the addition of one filling station [and one store site] in an area already commercial and already containing [one] such [station] [and various stores] * * *. [T]he area is residential. * * * [N]one of the new commercial developments along the * * * [r]oad * * * have had any effect upon the residential character of the neighborhood where the protestants live. That one new filling station [and one more store site] * * * at or near a busy intersection already having [one filling station and various stores] does not, in our judgment, show any substantial change or increase in commercialization between [1962 and 1969]."

The intensification in use of the commercial strip along Benfield Road likewise did not effect any real change in the character of the land to the west or the south or north or east, which since 1952 has been almost entirely residential, with the four corners of the intersection at Benfield Road and Jumpers Hole Road and a strip along Benfield Road for a short distance to the east a commercial enclave in its midst (although the two corners to the west have not been actually developed). As far as need is concerned in relation to increased population, in some six cases at least in the last two years, we have held that intensification, even heavy intensification resulting in large population growth, of residential uses adjacent to or surrounding a residential property sought to be rezoned to commercial use (often for a shopping center) will not of itself justify or support the commercial rezoning, and that the matter of need becomes pertinent only after sufficient change to permit rezoning to commercial has been

shown. See *Wright v. McCubbin,* 260 Md. 11, 271 A. 2d 365 (1970) ; *Wells v. Pierpont,* 253 Md. 554; *Miller v. Abrahams,* 257 Md. 126; *Chapman v. Montgomery County,* 259 Md. 641; *Hardesty v. Dunphy,* 259 Md. 718; *Cabin John Ltd. v. Montgomery Co.,* 259 Md. 661; *Harley v. Aluisi,* 259 Md. 275.

Judge Beardmore was right in holding the rezoning by the Board to be arbitrary, capricious and illegal.

*Order affirmed, with costs.*