995 A.2d 1068

SEMINARY GALLERIA, LLC

v.

DULANEY VALLEY IMPROVEMENT ASS'N, INC., et al.

No. 2591 Sept.Term, 2008.

Court of Special Appeals of Maryland.

May 27, 2010.

720

Howard L. Alderman, Jr. (Aaron J. Turner, on the brief), Towson, MD, for Appellant.

Michael P. Tanczyn and Peter M. Zimmerman (Carole S. Demilio, on the brief), Towson, MD, for Appellee.

Panel: MEREDITH, WRIGHT and RAYMOND G. THIEME, JR. (Retired, specially assigned), JJ.

MEREDITH, Judge.

Appellant, Seminary Galleria, LLC ("Seminary"), owns a commercial property used for retail and offices. The property is located in Baltimore County, and is split-zoned, with most of the property located in the "Business Local" zone and the rest in a "Density Residential" zone. In 2003, without seeking prior approval from the County, Seminary reconfigured four of the existing parallel parking spaces that were located in the residentially zoned portion of the property, and created 14 new parking spaces in their place. The net effect was that Seminary gained ten additional spaces upon the portion of the property that was zoned Density Residential. After a complaint to the County was lodged by, among others, Dulaney Valley Improvement Association, Inc. ("DVIA"), one of the appellees, Seminary attempted to obtain retroactive approval of the parking spots, but its first application for a special hearing or a variance was denied by the Zoning Commissioner. Following *de novo* review by the Board of Appeals of Baltimore County ("the Board"), the Board issued an order denying Seminary's requests for retroactive approval of the new parking spots on September 19, 2005.

Just five months later, on February 23, 2006, Seminary again filed petitions for approval of the ten new parking spaces, arguing this time that the additional spaces were needed to help it meet the County's parking requirements as amended in 1986. By the time the 2006 petitions came before the Board, the Board was composed of new members, and the Board approved Seminary's request to keep the new parking configuration on the property in the Density Residential zone. DVIA and the People's Counsel for Baltimore County, the second appellee, petitioned for judicial review in the Circuit Court for Baltimore County. The Circuit Court for Baltimore County agreed with the appellees' contention that approval of Seminary's second petition was precluded by *res judicata.* The circuit court reversed the Board.

In its appeal to this Court, Seminary challenges the circuit court's determination.

## QUESTIONS PRESENTED

Seminary presents four questions:

1. Whether an administrative agency's determination of the applicability of the doctrine of *res judicata* should be assessed pursuant to the substantial evidence standard of review when such determination constitutes a mixed question of law and fact[.]

2. Whether an assessment of the causes of action in the current and prior proceedings pursuant to a same evidence analysis establishes that the doctrine of *res judicata* does not preclude the relief granted by the Board[.]

3. Whether the substantial change of circumstances in this case establishes that the doctrine of *res judicata* does not preclude the relief granted by the Board[.]

4. Should the lower court have remanded the case to the Board for consideration of the alternative, Variance [sic] relief requested[.]

We answer "no" to questions 2, 3 and 4. With respect to question 1, we reject the appellant's implied assertion that the agency was required to resolve any disputed factual issue in

this case in order to determine whether the doctrine of *res judicata* was applicable. Consequently, the appropriate standard of review in this appeal is *de novo*. We affirm the judgment of the Circuit Court for Baltimore County.

## FACTS AND PROCEDURAL HISTORY

Seminary owns the subject property, the "Galleria" building complex, comprised of 211,635 square feet of space leased primarily for offices, with retail stores on the ground level. The complex is located at the intersection of York Road (a major four-lane arterial road) and Seminary Avenue (a smaller two-lane road). The majority of the property is zoned as "Business Local" or "BL" and the balance of the property is "Density Residential" or "DR." The DR zone functions as a transition or buffer zone between the commercial buildings and the residences (mostly single-family) located across the street and in the nearby area.

Pursuant to a use permit granted in 1955, parking for the Galleria complex is located in both the BL and DR zones. In 1983, the County Review Group ("CRG") approved the layout of the parking for the complex as meeting the requirements of Baltimore County Zoning Regulation ("BCZR") § 409.6, which required, based on the complex's planned uses, 728 parking spaces. The Galleria parking lots provided 734 parking spaces.

There are certain parts of the parking lots which are available to, but not close to, the busiest areas of the complex. Consequently, the prime parking area is crowded, while certain less-convenient areas of the Galleria parking lots often remain empty.

In 2003, over a holiday weekend, Seminary's parking lot contractor reconfigured four parallel parking spaces into 10 head-in parking spaces, and then added four new parking spaces and a low retaining wall. The additional spaces were created in a location where there had previously been grassy space that was zoned DR. Seminary did not obtain a permit or seek to amend the 1983 CRG-approved plan before making

these additions and modifications. Nevertheless, Seminary sought retroactive approval and attempted to legitimize the 14 newly created spaces.

## A. *Seminary Galleria I.*

On July 31, 2003, Seminary submitted a redlined version of the 1983 plan, and petitioned for both a special hearing and a variance to allow commercial parking adjacent to existing commercial parking in a residential zone.[1] *See* BCZR § 409.8.B. A hearing was held before the Deputy Zoning Commissioner for Baltimore County, who denied both petitions on October 2, 2003.

On July 1, 2004, Seminary filed an appeal to the Board, which heard the matter *de novo,* and denied Seminary's requested relief. The Board found that the additional spaces were being proposed for convenience only, and that the additional parking "might be 'detrimental to the health, safety, or general welfare of the public.' "

Seminary sought judicial review in the circuit court. On April 21, 2005, the circuit court issued an order stating that substantial evidence supported the Board's decision. But, because the Board's explanation of its analysis was not sufficiently detailed, the circuit court remanded the matter to the Board for more specific factual and legal analysis.

On September 19, 2005, the Board issued a Supplemental Opinion, denying Seminary's request to keep the 14 spaces it had constructed without a permit in 2003. The Board noted that Bruce Doak, a surveyor testifying as an expert witness for Seminary, had testified that 728 spaces were required by the BCZR and that 734 had been approved. Approval of the additional spaces would result in 748 parking spaces. The Board held that, "based upon the testimony of the Petitioner's

---

1. The variance was requested to allow construction of an additional 16 spots that Seminary proposed to create (above and beyond the 14 already constructed without a permit). The application for approval of 16 additional spots was denied, and Seminary never appealed that denial.

own witnesses, the special hearing for commercial parking in a residential zone must be denied." Noting that "Petitioner's witness admitted that it satisfied the zoning regulations regarding parking on the site," the Board found "there is no 'undue hardship' and the modified parking plan is not available." There was therefore no need for a modification under BCZR § 409.8.B in order to satisfy legal requirements, nor was there "undue hardship" to justify a modification under BCZR § 409.12.B.

Moreover, the Board held that the petition did not satisfy the special exception criteria under BCZR § 502.1, which sets out nine conjunctive conditions for a special use permit. One of these conditions requires that "the use for which the special exception is granted will not ... [b]e detrimental to the health, safety, or general welfare of the locality involved." BCZR § 502.1.A. The Board stated in its Opinion:

> In describing special exception uses, the BCZR states that "certain types of uses ... might cause unsatisfactory results of one kind or another ... and under certain conditions they could be detrimental to the health, safety, or general welfare of the public...." The citizens testifying before the Board explained the detrimental effects of [Seminary's] request under the criteria set forth in § 502.1. It is basically offensive to the neighbors because (1) they are located in the D.R. 5.5 zone; (2) they extend the commercial use into the buffer area, closing in on a settled residential neighborhood; and (3) they interfere[ ] with a designated fire lane. Mr. Flesher, a neighbor living across the street, stated that [Seminary] dumps plowed snow onto his property when it runs out of space on its site. He felt that this situation would be exacerbated if the present open spaces were converted to parking spaces. He has experienced car alarms, noise and trash from parked vehicles on the site and such disturbing activity will actually be closer to his home if the 14 additional spaces are allowed. In addition, he stated that tenants from the site have picnicked on his yard and that the hours of operation for these tenants have been extended over the years, some of them open 24 hours a day,

such as the subway [sic] operation and health club. The HMO is open Saturdays and Sundays broadening the commercial aspect of the residential uses. Richard Hurd, another neighbor across the street, also testified that the illegal parking spaces are occupied at 7:30 a.m. by tenants even when the rest of the lot is empty. Mr. Hurd disputes the need for additional parking since he has never seen all of the parking spaces occupied. Mr. Hurd explained that [Seminary] also dumped snow on his side of the street and on his property when there was no room in the open spaces. He fears that the problem will be exacerbated if the open spaces are further lost to parking spaces.

While it is true that the Fire Marshall's Office had no comment **with respect to the additional 14 parking spaces which were constructed in the fire lane, the Board is of the opinion that the use of the fire lane for additional parking is detrimental to the health, safety, and welfare of the general public.** The 14 spaces displace the original grass and planting area in the D.R. 5.5 zone. The neighbors have testified as to the adverse effects of the unauthorized parking spaces. **The Board finds that the construction of these spaces without the proper authorization is detrimental to the health, safety, and welfare of the neighborhood.** Therefore, it does not satisfy the requirements of § 502.1 of the BCZR and the plan should be denied.

(Emphasis added.)

No appeal or request for judicial review followed. Therefore, the Board's order dated September 19, 2005, became final. We shall follow the lead of appellee People's Counsel for Baltimore County and refer to this first case as *Seminary Galleria I.*

B. *Seminary Galleria II.*

On February 23, 2006, the present case, which we shall refer to as *Seminary Galleria II,* began with similar petitions requesting a special hearing for business parking in a residen-

tial zone, a modified parking plan, and an alternative petition for variance. Seminary differentiated the 2006 petitions from the previously-denied 2003 petitions by limiting the requests to just the 14 spaces which it had constructed without a permit in 2003.

Seminary also reframed its classification of the Galleria complex under the zoning regulations, contending that the complex was a "shopping center" based on its tenant mix. Under BCZR § 409.6.A.2, a "shopping center" with 100,000 feet or more of gross leasable area is required to provide 5 spaces per 1,000 feet. Seminary introduced a letter from a Zoning Supervisor at the Baltimore County Department of Permits and Development Management ("BCDPDM") stating that "it is the determination of this Office that the Seminary Galleria is a 'shopping center' as defined by the Baltimore County Zoning Regulations." Seminary argued that, under this "shopping center" classification, Seminary was required to provide more parking spaces than existed on the site.

Seminary sought approval of its as-built plan, including the 14 parking spaces constructed without a permit, "to meet to the extent possible the minimum parking requirements of BCZR § 409.6 utilizing all existing parking spaces shown," in lieu of complying with the minimum requirements of the BCZR for shopping centers. The petition for variance sought, in the alternative, "a variance from[ ] BCZR § § 409.6.A to permit a total of 746 parking spaces in lieu of: i) the 1059 spaces required [w/o shopping center provision] or ii) the 1084 spaces required for a shopping center with more than 100,000 square feet of GLA."[2] Seminary now represented that the Galleria's existing parking capacity was deficient by approximately 300 spaces, as a consequence of which Seminary requested approval of the 14 spaces to partially offset that deficit.

DVIA filed a motion to dismiss the 2006 petitions, contending that Seminary's claims for relief were barred by *res*

---

**2.** "GLA" refers to gross leasable area. *See* BCZR § 409.6.A.2.

*judicata.* On July 14, 2006, the Zoning Commissioner denied the motion to dismiss, stating: "The first case involved 14 additional parking spaces in the adjacent residential zone. This case makes that issue insignificant. In this case the Petitioner admits to being short 300 spaces. Therefore I will deny the Motion." Even so, the Commissioner noted in his Findings of Fact and Conclusions of Law: "I see nothing different in request for *[sic]* the 14 highlighted spaces on [Seminary's] exhibit 1 from that which was denied in Case No. 04–052–A *[Seminary Galleria I]*." The Commissioner further found that the Galleria did not come under the zoning definition of a shopping center because "[t]he buildings are not connected, the walkways are not intended to facilitate customer interchange between uses, and the site does not give the appearance of a continuous commercial area." The Commissioner recognized that the present actual tenant mix required 1084 parking spaces even though the approved site plan was based on a projected tenant mix requiring much less parking. Nevertheless, the Commissioner found that the parking deficit problem was "wholly self imposed" by the management of the Galleria because "the mix of tenants is completely determined by management who undoubtedly wants to maximize return on investment" but did so by willfully entering into leases that required parking capacity that exceeded the total number of spaces available under the site plan. According to the Commissioner, Seminary (as of 2006) is "presently required to have 643[sic] spaces and more importantly to have a mix of tenants that corresponds to this parking." "The Petitioner created every bit of this problem by not controlling tenant mix."

Finding that Seminary's willful creation of the excess burden on the parking lot did not fall into any exception warranting approval, the Commissioner denied the variance requests. Nevertheless, the Commissioner approved the special hearing and modified parking plan (minus the 14 spots) with the additional condition that Seminary not lease vacant space in the building until the tenant mix adjusted and required no more than 1049 spaces. After commenting that Seminary "incredibly asks [the County] to approve a parking plan with

the 14 spaces previously denied in Case 04–052–SPH," the Commissioner ordered: "The Petitioner shall eliminate the 14 parking spaces shown in Petitioner's exhibit 1 highlighted in yellow. . . ." Both Seminary and the appellees appealed to the Board of Appeals.

On March 20 and 21, 2007, the Board—now composed of totally different members than those who heard the *Seminary Galleria I* appeal—held a *de novo* hearing. The same surveyor who testified for Seminary in support of the 2003 application stated that the new calculations were made in response to updated tenant information; he offered his professional opinion that the complex was a shopping center and the petitions should be approved. Nevertheless, the surveyor admitted that neither he nor his firm performed any analysis of the tenant mix and square footage of the Galleria in connection with his 2003 testimony, nor had he verified the tenancy information he was given in 2003. Seminary also introduced a letter from the BCDPDM requiring the Galleria to comply with a newly enacted law that required surveillance cameras for shopping centers; Seminary argued that this letter demonstrated the County's acknowledgment that the Galleria was a shopping center.

A witness called by DVIA testified that removal of the 14 spaces and restoration of the original plan was preferable, even if it resulted in the loss of the ten new parking spaces. DVIA's main concern was minimizing or removing the disturbance of the DR-zoned area. A resident of a nearby home also testified about lights of tenants shining into his windows, and expressed his concerns about the decrease in value of his home, both as a result of the removal of vegetation and the addition of parking spaces on the Galleria site.

On February 11, 2008, the Board issued an order in which it approved both the classification of the Galleria as a shopping center and the amended parking plan. With respect to the appellees' assertion that Seminary's claim was barred by *res judicata*, the Board simply stated:

This Board feels that the matter of *res judicata* does not apply due to the specific nature of the 14 parking spaces and the matter of parking in the D.R. zone, which this Board feels is permitted. We find this case not to be another attempt to repeat prior cases.

\* \* \*

After a review of the facts, the testimony and evidence submitted, and the law, this Board finds that the issue of *res judicata* does not apply in this case. . . .

Both DVIA and the People's Counsel for Baltimore County filed petitions for judicial review in the Circuit Court for Baltimore County. Because both petitions involved the same record and Board opinion, on the motion of the People's Counsel, the circuit court consolidated the cases. On September 4, 2008, the circuit court heard oral arguments. Appellees again argued *res judicata*, and Seminary again claimed that a newly-discovered parking deficiency justified approval of the additional parking spaces.

On December 17, 2008, the circuit court issued its opinion and order reversing the Board's 2008 decision. The circuit court stated: "The real question presented in this appeal is whether this 'short fall' was known, or knowable by Seminary Galleria before the first case was decided." The court ruled as follows:

It is well settled that the principle of *res judicata* applies to administrative proceedings. [Citations omitted.] Accordingly, if the issues sought to be litigated in Seminary Galleria II either were litigated in Seminary Galleria I, or "with propriety could have been litigated" in Seminary [Galleria] I, prosecution of relief in Seminary Galleria II is barred.

The parties were identical in each matter. The property involved was identical in each matter. Approval of the identical ten (10) [net additional] parking spaces was the issue in each matter. Substantially the same witnesses testified for the same parties in each matter. And importantly, **there was absolutely no change in the facts be-**

tween the date of the Board's decision in Seminary Galleria I and the hearing in Seminary Galleria II relating to the Board's finding in the first matter that construction of additional spaces "is detrimental to the health, safety and welfare of the neighborhood." Presumptively, therefore, the doctrine of *res judicata* would seem to preclude the second litigation between these parties over these same ten (10) parking spaces.

Seminary Galleria's argument, however, is that the "facts and circumstances have changed since the prior cases" [citation omitted], and that, therefore, the second litigation over these parking spaces was permitted. It argues that, at some point (exactly when or under what circumstances is not made clear in the record) Baltimore County required it to "file for review and approval a current as-built parking plan" [citation omitted] and that, after it did so, it discovered that it was actually required by zoning regulations to furnish over 1,000 parking spaces, as opposed to the 728 spaces which it had argued it was required to furnish by the County's zoning regulations in Seminary Galleria I. In effect, Seminary Galleria argues that it was *compelled* to file Seminary Galleria II as a *defensive* measure against a claim that it was not in compliance with minimum parking requirements which are calculated when the retail-office property is considered a "shopping center."

**The short, and final answer to Seminary Galleria's argument is that all facts necessary to make the parking deficiency argument that it made in Seminary Galleria II were available to Seminary Galleria when it filed, litigated and lost Seminary Galleria I.** There is no evidence in the record that either the tenant mix at the property or its character as a "shopping center" substantially changed between September [19], 2005 [the date the Board issued its final ruling in *Seminary Galleria I*] and February 23, 2006 [the date Seminary filed the current petitions] to justify the filing of new litigation. Rather, it is clear that, had Seminary Galleria's witnesses been asked in the earlier case to perform the calculations and do the other

work which they ultimately did in the latter case, the theory of minimum parking requirements based on a new tenant mix and/or characterization of the property as a "shopping center" could have been advanced in the first case. Mr. Doak testified in the second case as follows:

Q. Did you do any analysis, or your firm, rather, or you do any analysis prior to your testimony in [*Seminary Galleria I*] to break down the tenancy or the square footage existing at that time in the Galleria?

A. No, sir. [Citation omitted.]

\* \* \*

Q. What, if anything, did you do to verify the existing tenant mix was accurately reflected in the plan that you did review?

A. For the first case?

Q. For the first case.

A. Nothing, sir. [Citation omitted.]

This Court has reviewed all of the testimony of Seminary Galleria witnesses in Seminary Galleria II and specifically concludes that the issue of minimum parking requirements at the property, based on either "an amendment to a prior plan for the subject property that was approved in the 1980's" ( [Seminary's] Reply Memo, p. 2) or on "current" requirements reflecting a new tenant mix and a characterization of the property as a shopping center, could plainly and clearly have been litigated in the earlier case had Seminary Galleria desired to avoid piecemeal litigation. While the Court will not conclude that Seminary Galleria's conduct after losing Seminary Galleria I amounted to an "artifice" or a "sham" as characterized by People's Counsel, the conclusion that all "minimum parking requirement", "parking deficiency" or "short fall" arguments could have and should have been made in the earlier litigation is inescapable. Prosecution of relief in Seminary Galleria II

was barred by the final determination made by the Board of Appeals in Seminary Galleria I.

(Emphasis in bold added.)

The circuit court reversed the holding of the Board and remanded the case to the Board with instructions to deny all relief sought by Seminary in *Seminary Galleria II*. Seminary noted an appeal to this Court.

## STANDARD OF REVIEW

Although this appeal comes to us from the circuit court, we review the decision of the Board. Our review of an administrative agency's action generally is a "narrow and highly deferential inquiry." *Park & Planning v. Greater Baden*, 412 Md. 73, 83, 985 A.2d 1160 (2009). Our review is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel v. People's Counsel*, 336 Md. 569, 577, 650 A.2d 226 (1994). "[T]his Court may not substitute its judgment for the administrative agency's in matters where purely discretionary decisions are involved, particularly when the matter in dispute involves areas within that agency's particular realm of expertise, so long as the agency's determination is based on 'substantial evidence.' " *People's Counsel v. Surina*, 400 Md. 662, 681, 929 A.2d 899 (2007) (citations omitted). Judicial deference to an agency's legal determinations, however, is less broad. The Court of Appeals stated in *Belvoir Farms v. North*, 355 Md. 259, 267, 734 A.2d 227 (1999): "Generally, a decision of an administrative agency, including a local zoning board, is owed no deference when its conclusions are based on an error of law." Where the legal conclusions reached by the agency are based on an erroneous interpretation or application of law, we may reverse those decisions. *See Trinity v. People's Counsel*, 407 Md. 53, 78, 962 A.2d 404 (2008).

## DISCUSSION

Seminary contends that the Board's determination that *res judicata* was not applicable to the 2006 petitions in *Seminary Galleria II* was a mixed question of law and fact, which would necessitate our review under the "substantial evidence" test. *Charles County v. Vann,* 382 Md. 286, 296, 855 A.2d 313 (2004). Seminary contends that we must only evaluate "whether it was reasonable for the Board to conclude that the doctrine of *res judicata* does not preclude Appellant's requested relief." But DVIA and the People's Counsel respond that *res judicata* is consistently analyzed by courts as an issue of law. We agree with the appellees that the issue of whether *res judicata* applies to *Seminary Galleria II* is a question of law, and that it was proper for the circuit court—and it is appropriate for this Court—to review the legal conclusion of the Board *de novo.*

■ The doctrine of *res judicata* provides that "a judgment on the merits in a previous suit between the same parties or their privies precludes a second suit predicated upon the same cause of action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In *Whittle v. Bd. of Zoning Appeals,* 211 Md. 36, 38, 125 A.2d 41 (1956), the Court of Appeals considered "whether or not a prior adverse ruling by the Circuit Court for Baltimore County on an application for a special permit for a funeral home on the same premises is *res judicata* as to [a second application for a similar special permit]." The Court of Appeals stated in *Whittle:* "If the second suit is between the same parties and is upon the same cause of action, a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which *could have been* litigated." *Id.* at 49, 125 A.2d 41 (emphasis added).

A similar summary of this point appears in *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961):

The doctrine of *res judicata* is that a judgment between the same parties and their privies is a final bar to any other

suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction, proceedings were regular, and his omission was due to his own negligence.

In *Alvey, supra,* 225 Md. at 391, 171 A.2d 92, the Court of Appeals quoted with approval the following statement from *Henderson v. Henderson,* 67 Eng. Rep. 313, 319, 3 Hare 100, 115 (1843):

[W]here a given matter becomes the subject of litigation in, and of adjudication by, a Court of competent jurisdiction, the Court requires the parties to bring forward their whole case, and will not (except under special circumstances) permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted a part of their case. The plea of *res judicata* applies, except in special cases, not only to points upon which the Court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.

Although there were cases decided several decades ago in which the Court of Appeals held that principles of *res judicata* did not apply to rulings of administrative agencies, the RESTATEMENT (SECOND) OF JUDGMENTS (1982) provides in § 83(1) that "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." The more recent Maryland cases have held that, when an administrative agency is performing a quasi-judicial function, the principles of *res judicata* are applicable. *See, e.g., Stavely v. State Farm Mut. Auto. Ins. Co.,* 376 Md. 108, 116, 829 A.2d 265 (2003); *Sugarloaf v. Waste Disposal,* 323 Md. 641, 658–59, 594 A.2d 1115 (1991); *Cicala v.*

*Disability Review Bd.,* 288 Md. 254, 263–64, 418 A.2d 205 (1980).

■ The Court of Appeals has confirmed that an administrative agency's decision will be entitled to preclusive effect if the test first enunciated in *Exxon Corp. v. Fischer,* 807 F.2d 842, 845–46 (9th Cir.1987), is met. *See Batson v. Shiflett,* 325 Md. 684, 705, 602 A.2d 1191 (1992). In *Batson, id.* at 701, 602 A.2d 1191, the Court of Appeals quoted with approval the following test for determining whether an administrative agency's ruling "is entitled to preclusive effect":

> Whether an administrative agency's declaration should be given preclusive effect hinges on three factors: (1) whether the [agency] was acting in a judicial capacity; (2) whether the issue presented to the [reviewing] court was actually litigated before the [agency]; and (3) whether its resolution was necessary to the [agency's] decision.

(Internal quotation marks omitted.) *Accord Neifert v. Dept. of Environment,* 395 Md. 486, 507, 910 A.2d 1100 (2006).

■ The Board's decision in *Seminary Galleria I* meets this test. (1) The Board acted in a judicial capacity by conducting a *de novo* hearing, allowing the parties to present evidence, and ruling on the disputed legal issue. (2) The issue of whether the 14 parking spaces could remain was actually litigated in *Seminary Galleria I.* (3) The ruling was necessary to—indeed, the essence of—the Board's decision in *Seminary Galleria I.*

In *Whittle, supra,* 211 Md. at 45, 125 A.2d 41, the Court of Appeals reviewed a variant of *res judicata* that arises in connection with successive zoning applications:

> The general rule, where the question has arisen, seems to be that after the lapse of such time as may be specified by the ordinance, a zoning appeals board may consider and act upon a new application for a special permit previously denied, but that it may properly grant such a permit only if there has been a substantial change in conditions. [Citations omitted.] This rule seems to rest not strictly on the doctrine of *res judicata,* but upon the proposition that it

would be arbitrary for the board to arrive at opposite conclusions on substantially the same state of facts and the same law.

\* \* \*

It is our view that where the facts are subject to changes which might reasonably lead to an opposite result from that arrived at in an earlier case, and if there have been substantial changes in fact and circumstances between the first case and the second, the doctrine of *res judicata* would not prevent the granting of the special permit sought by the appellees.

The Court of Appeals has emphasized that, before a party can apply to a zoning agency for relief previously denied by the agency, "substantial changes in fact and circumstances" must be, indeed, substantial. *Woodlawn Ass'n v. Board of County Com'rs*, 241 Md. 187, 197, 216 A.2d 149 (1965), involved several neighboring landowners' challenge to the rezoning of 47 acres of nearby undeveloped woodland for garden-style high-occupancy apartments. The owner of the property applied for rezoning but was thwarted in his rezoning efforts three times between 1961 and 1964. When the application was finally granted in 1964, the nearby landowners appealed. The *Woodlawn* Court noted that, in *Whittle*, "[n]either neighborhood sentiment nor the slight distinction created by the additional restrictions were deemed to amount to a substantial change in circumstances." *Woodlawn, supra,* 241 Md. at 197, 216 A.2d 149. Finding *Whittle* to be "dispositive of the case before us," the Court stated that it found "no substantial or significant change in fact and law was shown to have occurred" between the applications at issue in *Woodlawn. Id.* at 197, 216 A.2d 149. The *Woodlawn* Court held that "the principles of *res judicata* were controlling," *id.* at 190, 216 A.2d 149, and barred the 1964 approval. The Court explained, *id.,* that it could

find in the record no evidence of significant change in the neighborhood of the property between 1961 and 1964, which means that the action of the Council in rezoning in 1964 on essentially the same facts and conditions it found insufficient

to permit rezoning in 1961 was arbitrary, capricious, and illegal.

Similarly, in *The Chatham Corp. v. Beltram*, 243 Md. 138, 220 A.2d 589 (1966), the Court of Appeals rejected a second attempt to rezone a property because, although the applicant made new arguments, the facts underlying the previous denial remained unchanged. The Court stated:

> On the question of whether there had in fact been any significant change between the time of the first decision and the second, we think Judge Macgill's analysis in his opinion in the second case is impeccable in its perception and accuracy. He said:

>> "The resolution [of the Commissioners in the second application] made no specific finding of a change in circumstances in the neighborhood since the last decision, nor of any subsequently discovered mistake in the existing classification. The report and recommendation of the Planning Commission was a recapitulation of the report and recommendation which had been submitted, considered and rejected by the Board at the first hearing. The availability of public water and sewerage was also a factor presented and presumably considered by the Board at its earlier hearing. It was discussed by this Court in its opinion in the case thereafter filed. The fact that the property was contiguous to land zoned for garden apartments and for a shopping center was no less a fact when the first petition was denied. **It must be concluded that the only substantial change which led to the later action of the Board was a change of mind of a majority of its members. The ability to reconsider and change one's mind is, in most aspects of human endeavor, a virtue more often than a vice. In matters such as this, however, it risks the danger of being labelled capricious."**

*Id.* at 151–52, 220 A.2d 589 (emphasis added).

In the same year that the Court of Appeals decided *Chatham*, the Court also decided *Alvey v. Hedin*, 243 Md. 334, 221

A.2d 62 (1966) (*"Hedin"*). Alvey had successfully applied to rezone 4.75 acres on the property to Heavy Commercial and then built a marina. The rezoning was later declared void on appeal. Alvey then attempted to obtain Light Commercial zoning. Alvey had argued mistake in the original zoning classification of the property and made the same argument in *Hedin*. But in the previous case, on the same facts, the court had found no mistake in the original zoning. The *Hedin* Court ruled against Alvey, stating:

> The above holding in the first case is an absolute bar to the present attempt by the Alveys to again raise the question of mistake in original zoning of the same tract of land, because any of the testimony relied upon in the instant case as to this question could and should have been presented in the first case, and the applicability of the doctrine of res judicata as to this mistake question is not affected by the fact that they are here attempting to get a different type of commercial classification than in the first case.

*Id.* at 340, 221 A.2d 62.

Seminary contends that there was a material change in facts and circumstances because the denial in *Seminary Galleria I* of its request to keep the 14 constructed spaces thereafter "required" Seminary to "prepare and submit a completely new plan depicting all existing buildings and parking spaces and the total size of all buildings." As a consequence, Seminary applied current parking standards to the complex and calculated the spaces that would be required if (a) the entire complex was deemed a "shopping center," or (b) the complex was evaluated based on the types of uses of its actual tenant mix. Both of these calculations yielded a parking requirement of over 1,000 parking spaces. Moreover, Seminary had obtained a "zoning verification letter" from a zoning supervisor recognizing that the Galleria "is a 'shopping center' as defined in the Baltimore County Zoning Regulations," although the supervisor never testified in this case.

Nevertheless, the tenant mix remained substantially the same between 2003 and 2006, and so did the building struc-

tures. In *Seminary Galleria II,* the Board never made a finding that the circumstances at the Galleria had changed since 2003; they had not. The only change was in Seminary's characterization of the entire complex as a "shopping center" for the purpose of calculating how many spaces were required to be provided, notwithstanding the fact that approximately 90% of the complex was used for offices rather than retail. Seminary appears to have resorted to the revised calculations of parking spaces *after* its application for approval of the 14 spaces was denied in *Seminary Galleria I.* Although the zoning supervisor's letter may have confirmed that the Galleria met a definition of a shopping center for at least some purposes, the evidence to support that classification was fully available in 2003. Seminary did not demonstrate any material change in the retail use at the Galleria subsequent to 2003. The same calculations of parking requirements could have been performed in 2003, before the hearings in *Seminary Galleria I.*

Moreover, like the circuit court, we cannot find in the record any evidence to shed light on the specific circumstances of the purported demand by Baltimore County for Seminary to submit an as-built plan in 2006. But, even if there was such a directive issued by the County, Seminary makes no contention that such directive was based upon any change in law that occurred subsequent to *Seminary Galleria I.*

The result in the instant case is controlled by *Woodlawn, Chatham,* and *Hedin.* The facts in September 2005, when Seminary's first petition for a variance or special hearing was denied by the Board, were no different than in February 2008, when the second petition was granted by the Board in an arbitrary and capricious exercise of its authority. The use of a portion of the Galleria complex as a shopping center was no less a fact in 2005 than it was in 2008. Seminary's surveyor, Bruce Doak, testified that he had not considered the actual mix of tenants in the Galleria when he surveyed the complex in preparation for his testimony in the 2003 hearings. Instead, Doak was given numbers from the 1983 plan and was given "some information on the leases," but never performed

any analysis of the square footage or existing tenants prior to testifying. In addition, Seminary, by characterizing the entire complex as a "shopping center" in 2006, sought to reapply for the same relief (approval of the 14 parking spaces constructed without a permit) it had previously requested under a different theory.

Seminary cites *Jack v. Foster Br. Homeowners' Ass'n*, 53 Md.App. 325, 452 A.2d 1306 (1982), and contends that the circuit court erroneously used a "transactional" analysis rather than the "same evidence" analysis adopted in *Jack*. Seminary contends that *Seminary Galleria I* sought approval of fewer spaces, and *Seminary Galleria II* sought approval of more spaces. According to Seminary, these differing desired results required proof of different facts. Nevertheless, *Jack* stated: " '[T]he judgment in the former action will be a bar, provided the evidence necessary to sustain the judgment for the plaintiff in the present [second] action would have authorized a judgment for him in the former.' " *Id.* at 334, 452 A.2d 1306 (quoting *Klein v. Whitehead*, 40 Md.App. 1, 18, 389 A.2d 374 (1978) (citations omitted)). We are persuaded that the same evidence produced in *Seminary Galleria II* could have been offered in *Seminary Galleria I* in support of Seminary's efforts to retain the 14 spaces constructed without a permit. In both cases, Seminary's request for relief was the retroactive approval of the same 14 spaces it had constructed in the DR zone.

Further, the Board's opinion that *res judicata* did not apply "due to the specific nature of the 14 spaces and the matter of parking in the D.R. zone, which this Board feels is permitted," was "a broad conclusory statement and not based on sufficient facts in the record before it." *Greater Baden, supra,* 412 Md. at 109, 985 A.2d 1160. As the Court of Appeals said in *Greater Baden, id.*: "Such a half-baked conclusion is not entitled to deferential review."

With reasonable diligence, Seminary could have discovered and asserted in support of the original 2003 filing its current argument that the Galleria needs more parking spaces in

order to comply with requirements the County adopted in 1986. Seminary's failure to accurately and contemporaneously survey the Galleria in connection with its first application to approve the additional spaces is not a reason to consider a second application seeking the same relief.

Finally, Seminary contends that, instead of reversing the order of the Board and therefore disapproving the grant of the application, the circuit court should have instead remanded the case to the Board for consideration of the alternative variance relief. For the reasons we have discussed above, the request for a variance in *Seminary Galleria II* is also barred by *res judicata.* The determination of the Board in *Seminary Galleria I* was that the proposed modification of the parking spaces and green space would be detrimental to the surrounding area, and there are insufficient different facts or changed circumstances to justify a remand to consider an issue that was previously litigated.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY IS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**